# EXHIBIT A

## SETTLEMENT AND MUTUAL RELEASE AGREEMENT

FIORDALIZA DIAZ ("Diaz") and JOYERIA ELIZABETH I, CORP., JOYERIA ELIZABETH II, CORP., JOYERIA ELIZABETH III, CORP. AND TOMASA IZAQUIRRE (collectively "JE," unless stated otherwise), their past, present, and future affiliates, partners, stockholders, successors, assigns, officers, directors, owners, managers, joint ventures, insurers and reinsurers, attorneys, agents, representatives, employees, former employees, and any other person, firm or corporation with whom any of them are now or may hereafter be affiliated (collectively "Releasees," or "Releasee" if referred to individually) (the aforementioned collectively, the "Parties") enter into this Settlement and Mutual Release Agreement ("Agreement") to resolve all of their disputes, including those that were asserted or could have been asserted against the parties herein in the action filed in the United States District Court for the Southern District of New York, captioned *Diaz v. Joyeria Elizabeth I, Corp., et al.;* 1:17-CV-05136-SHS (the "Litigation"). Accordingly, the Parties agree to the following terms:

WHEREAS, certain disputes and controversies have arisen between Diaz and JE in connection with Diaz's employment and the payment of her wages,

WHEREAS, Diaz alleged in the Litigation that JE failed to pay her overtime compensation, as well as other alleged violations of federal and state wage payment laws,

WHEREAS, there has been no determination on the merits of the Litigation and JE absolutely denies any wage violations or other unlawful conduct,

WHEREAS, Diaz has voluntarily agreed to execute a complete release of all claims as stated herein,

WHEREAS, JE has voluntarily agreed to execute a complete release of any and all potential claims against Diaz; and

WHEREAS, the Parties wish to avoid additional cost, the uncertainty of litigation, and settle and resolve the Litigation and all controversies between them amicably and expeditiously.

NOW THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby STIPULATED AND AGREED by and between the undersigned Parties that all matters between them are hereby resolved as follows:

1.     **Consideration**. Provided Diaz signs this Agreement and complies with the terms and conditions herein, JE shall pay a total of Fifty Seven Thousand, Five Hundred Dollars and Zero Cents ($57,500.00) ("Settlement Payment") which shall be allocated and paid as follows:

        a.   Within thirty (30) days after: (i) counsel for JE has received this Agreement executed by Diaz and Form W-9(s) executed by Diaz and her counsel; and (ii) Court approval of this settlement, JE will make one (1) payment of $28,750.00, for which a Form 1099 will be issued to Diaz and her counsel. From this

amount, $10,535.75 will be apportioned for attorneys' fees and costs, with the balance of $18,214.25 to be paid to Diaz;

b.  120 days after Court approval of this settlement, JE will make one (1) payment of $14,375.00, for which a Form 1099 will be issued to Diaz and her counsel. From this amount, $4,791.66 will be apportioned for attorneys' fees, with the balance of $9,583.34 to be paid to Diaz;

c.  240 days after Court approval of this settlement, JE will make one (1) payment of $14,375.00, for which a Form 1099 will be issued to Diaz and her counsel. From this amount, $4,791.66 will be apportioned for attorneys' fees, with the balance of $9,583.34 to be paid to Diaz.;

d.  All of the payments referenced *supra* shall be sent to Borrelli & Associates, P.L.L.C., 1010 Northern Boulevard, Suite 328, Great Neck, New York 11021 and made payable to "Borrelli & Associates, P.L.L.C. as attorneys for Fiordaliza Diaz";

e.  In the event that JE fails to make the settlement payments in a timely manner pursuant to the above schedule set forth in this Agreement, counsel for Diaz shall provide notice of the default by email to Tomasa Izaquirre at jwelizabeth@hotmail.com, with a copy to counsel for JE via email at alease@karpf-law.com. JE will then have seven (7) days from the date of receipt of such notice within which to cure the default by delivering to Diaz's attorneys at the address listed above via overnight delivery any amounts due and owing to Diaz. If JE timely cures its breach, no other dates in the above schedule shall become altered or in any way affected. If JE fails to timely cure its breach, two hundred percent (200%) of the entire unpaid balance of the payments ($57,500.00 less any payments made under this Agreement) will then become due and owing, and Diaz may apply to the Court, which will retain jurisdiction over the Action to enforce the terms of this Agreement, to enter judgment for that amount, plus reasonable attorneys' fees and costs associated with seeking judgment for JE's breach including costs and fees for any motion for costs and fees.

2.  **No Consideration Absent Execution of this Agreement**.  Diaz expressly acknowledges and agrees that she would not otherwise be entitled to the consideration set forth in this Agreement were it not for the covenants, promises, and releases herein, and that the settlement and other consideration provided by JE constitute good and valuable consideration for the release by Diaz. JE expressly acknowledges that it is providing good and valuable consideration to support this Agreement above and beyond any amounts that may have been disputed.

3.  **Taxation**.  Diaz understands and acknowledges that there may be federal income tax or other tax implications to JE's payment of some or all of the monies paid pursuant to this Agreement. Diaz further understands and acknowledges that in the event any governmental or taxing authority takes the position that some or all of the monies paid pursuant to this Agreement

2

are taxable or taxable in a different manner than set forth in this Agreement, Diaz shall be solely responsible for any and all tax obligations that may arise. If any governmental or taxing authority disagrees with how the payment is allocated, said allocation shall not void any other provision of this Agreement or General Release of Claims. Diaz further warrants and agrees to indemnify, secure, and hold JE harmless from any costs, assessments, penalties, damages, fees, interest, or any other sums arising from any tax obligations imposed by any governmental or taxing authority as a result of the monies paid pursuant to this Agreement.

4. **No Amounts Owing, No Admission of Liability**. Diaz acknowledges that she has received all wages, compensation, and benefits due her from JE. Diaz understands and agrees that, except as specifically set out in this Agreement, no wages, commissions, bonuses, benefits, or other compensation are or will become due to Diaz from JE. Further, Diaz and JE hereby represent and warrant that this Agreement is not in any respect an admission or statement of liability or wrongdoing by Diaz or by JE.

5. **General Release and Waiver Of All Claims By Diaz**. In consideration of the promises made in this Agreement, Diaz for herself, her heirs, executors, administrators, and assigns, fully and forever releases, acquits, and covenants not to initiate, sue or file any charges, claims or causes of action against JE and any other Releasee and holds JE and all other Releasees harmless from any and all claims, demands, obligations, losses, causes of action, costs, expenses, attorneys' fees, liabilities, and indemnities of any nature whatsoever, including, but not limited to, any claims of any kind arising out of or in any manner relating to Diaz's employment with JE and/or the payment of wages to Diaz, whether based in statute, contract, tort, or any other legal or equitable theory of recovery whatsoever, including, but not limited to:

- The Fair Labor Standards Act;
- The New York Labor Law(s);
- New York Codes, Rules and Regulations ("NYCRR");
- The Internal Revenue Code;
- The New York State Human Rights Law;
- The New York City Human Rights Law;
- The Americans with Disabilities Act;
- The Age Discrimination in Employment Act;
- Older Worker Benefit Protection Act;
- Title VII of the Civil Rights Act;
- Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act (except for any vested benefits under any tax qualified benefit plan, including but not limited to, Roth and Standard 401(k) accounts);
- The Fair Credit Reporting Act;
- The Immigration Reform Control Act;
- The Rehabilitation Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Uniformed Services Employment and Reemployment Rights Act;

- Worker Adjustment and Retraining Notification Act;
- Employee Polygraph Protection Act;
- New York statutes regarding whistleblower protection; personnel files; criminal records; wage complaints; retaliation;
- any other federal, state or local civil rights law, whistle-blower law or any other local, state or federal law, regulation or ordinance;
- any public policy, contract (oral, written or implied), tort, equity, constitution or common law;
- any claims for vacation, sick or personal leave pay, short term or long term disability benefits, or payment pursuant to any practice, policy, handbook or manual of Released Parties; or
- any basis for costs, fees, or other expenses including attorneys' fees.

If any claim is not subject to release, to the extent permitted by law, Diaz waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which JE or any other Releasee is a party.

6.    **General Release and Waiver Of All Potential Claims By JE**.  In consideration of the promises made in this Agreement, JE for itself, its heirs, executors, administrators, and assigns, fully and forever releases, acquits, and covenants not to initiate, sue or file any charges, claims or causes of action against Diaz and holds Diaz harmless from any and all claims, demands, obligations, losses, causes of action, costs, expenses, attorneys' fees, liabilities, and indemnities of any nature whatsoever, including, but not limited to, any claims or potential claims of any kind arising out of or in any manner relating to Diaz's employment with JE, whether based in statute, contract, tort, or any other legal or equitable theory of recovery whatsoever.

7.    **Full and Knowing Waiver of ADEA Claims**.  In addition to the waivers and releases set forth in Paragraph 6, Diaz expressly waives any and all rights under the Age Discrimination in Employment Act, 29 U.S.C. § 626.  Diaz is advised to consult with an attorney before executing this Agreement.  By signing this Agreement, Diaz certifies that:

7.1.    Diaz has carefully read and fully understands this Agreement;

7.2.    Diaz was advised by JE in writing, via this Agreement, to consult with an attorney before signing this Agreement;

7.3.    JE hereby allows Diaz a period of twenty-one (21) calendar days, running from the receipt of this Agreement, to consider this Agreement before signing it;

7.4.    Diaz may revoke her release of any claims based on the Age Discrimination in Employment Act in this Agreement within seven (7) calendar days after the date Diaz signs this Agreement (the "Revocation Period"). Diaz agrees that if she wishes to revoke this Agreement, she must notify JE in writing by sending a revocation notice to Adam C. Lease, Esq., Karpf, Karpf & Cerutti, P.C., 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020, which writing must be delivered on or before the expiration of the Revocation Period.  In the event

4

this Agreement is signed prior to the expiration of the twenty-one (21) calendar day review period contained herein, Diaz acknowledges that she voluntarily and knowingly agrees to waive her entitlement to take twenty-one (21) days to consider this Agreement;

      7.5    This Agreement does not prevent Diaz from raising an age discrimination claim arising from facts and events occurring after the Effective Date of this Agreement; and

      7.6.    Diaz agrees to the terms knowingly, voluntarily and without intimidation, coercion or pressure.

## 8.    <u>Affirmations by Diaz</u>.

      8.1    Diaz affirms that she has not filed, caused to be filed, and is not presently a party to any claim or other type of action with any governmental agency or court against Released Parties, except for the Litigation identified above.

      8.2    Diaz affirms that she has reported all hours worked with JE and, as of the separation of her employment, she has been paid and/or has received all compensation, wages, bonuses, commissions, benefits and/or monies to which she may be entitled except for those set forth in paragraph 1 above.

      8.3    Diaz affirms that all of JE's decisions regarding her pay and benefits through the date of her separation of employment were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

      8.4    Diaz affirms that she has been granted any leave to which she was entitled and/or requested under the FMLA or any related state or local leave or disability accommodation laws. Diaz further affirms that she has no known workplace injuries or occupational diseases from employment with JE.

      8.5    Diaz warrants that she is not a Medicare beneficiary as of the date of this release related to physical injuries arising out of any claims asserted in the Litigation, and therefore no conditional payments have been made by Medicare. Diaz will indemnify, defend and hold Released Parties harmless from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown. This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 <u>U.S.C.</u> Sec. 1395y(b). The parties resolved this matter in compliance with both state and federal law. The parties made reasonable efforts to adequately protect Medicare's interest and incorporate such into the settlement terms.

## 9.    <u>Agreement Not To Seek Or Accept Future Employment</u>. Diaz acknowledges and agrees that her employment with JE is irrevocably and permanently terminated and that she is permanently ineligible for rehire or reemployment by JE. Diaz waives any right, if any, to seek or obtain employment or reemployment with JE. Diaz agrees never to seek employment or otherwise seek to be hired, rehired and employed, reemployed or reinstated by JE at any time or at any location. In the event Diaz does apply for employment with JE, JE may summarily ignore and

5

reject such application without cause and without liability. Diaz further releases and waives any and all claims she may have in any forum against JE for reemployment or reinstatement doctrine, and Diaz represents, warrants and agrees that she will not seek reemployment or reinstatement in any forum or in any manner. Diaz acknowledges that the settlement represented by this Release does not require her reemployment or reinstatement, and Diaz irrevocably waives and releases any past, present or future claim that failure to reemploy or reinstate her is an act of retaliation or otherwise actionable under any theory.

10.     **Mutual Non-Disparagement**. Diaz agrees not to defame or disparage JE and the Releasees, or their products or services, or make or solicit any comments, statements or the like to the media or others that may be considered to be derogatory or harmful to the good name or business reputation of JE. Except nothing in this agreement shall prohibit Diaz from making any truthful statements relating to her experiences in litigating this case, or by providing truthful testimony to the Equal Employment Opportunity Commission or any governmental agency. In the event Diaz files or is included in any administrative charge or investigation after the effective date of this Agreement, Plaintiff agrees to waive any right to monetary recovery should any administrative or governmental agency or any other person or entity, pursue any claims on her behalf against the persons or entities covered by the release in this Agreement. JE agrees to counsel all management employees regarding non-disparagement of Diaz, and Tomasa Izaquirre agrees not make or solicit any comments, statements or the like to the media or others that may be considered to be derogatory or harmful to the good name or business reputation of JE. JE is specifically not accepting liability for statements made by current or former employees of JE made outside the scope of their employment.

11.     **References**. Diaz agrees to direct any and all potential employers seeking references solely to contact Tomasa Izaquirre, JE's President/Owner. Pursuant to JE's standard policy, Ms. Izaquirre will, upon request, confirm Diaz's dates of employment and positions held, but will not comment on the circumstances of the cessation of her employment. Further, if asked by any party seeking a reference why the information provided is limited, JE will affirmatively state that it is their policy to limit such information for all reference requests. Diaz agrees that she will not otherwise seek any reference from JE or any employee or representative of JE and agrees that JE is not required to provide any reference other than to confirm Diaz's dates of employment and positions held.

12.     **Interpretation**. Should any court of competent jurisdiction declare any provision of this Agreement unenforceable, all other provisions of this Agreement shall not be affected and will remain enforceable. The Parties agree that they have fully negotiated the terms of this Agreement and that its terms, provisions, and conditions shall not be interpreted or construed against either party.

13.     **Amendment**. This Agreement may not be modified except through a written document, signed by an authorized representative of each of the Parties, in which the Parties expressly agree to modify it.

14.     **New York Law**. The Agreement has been executed in New York, and New York law shall be used to interpret the Agreement. Any legal action involving the Agreement shall be

6

initiated solely in New York, NY.

**15.    Jurisdiction**.  The parties agree that the United States District Court for the Southern District of New York shall have jurisdiction over any disputes arising under this Agreement.  In the event suit is brought to enforce, or to recover damages suffered as a result of breach of this Agreement, the dispute will be decided by a judge and not a jury, and the prevailing party shall be entitled to recover its or her reasonable attorneys' fees and costs of suit, including attorneys' fees and costs for making any such application.

**16.    Successors and Assignment**.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, executors, successors and assigns.  Neither this Agreement nor any right or interest hereunder shall be assignable by Diaz without prior written consent of an authorized agent of JE.

**17.    Counterparts**.  This Agreement may be executed in several counterparts, each of which shall be deemed original but all of which together shall constitute one and the same instrument.

**18.    Waiver**.  Neither the failure nor any delay on the part of either party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.

**19.    Headings**.  The headings of sections and paragraphs herein are included solely for convenience of reference and shall not control the meaning or interpretation of any of the provisions of this Agreement.

**20.    Neutral Construction**.  Each party to this Agreement had the opportunity to retain counsel and to review and participate in the drafting of this Agreement and, accordingly, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting parties will not be employed or used in any interpretation or enforcement of this Agreement.

**21.    Full and Knowing Waiver**.  By signing the Agreement, Diaz certifies that she has carefully read and fully understands the Agreement and that she agrees to the terms knowingly, voluntarily and without intimidation, duress, coercion or pressure.

**22.    Time To Negotiate and Consider This Agreement**.  In addition to having the opportunity to negotiate this Agreement, before signing it, Diaz has been advised to consult with, and has in fact consulted with, her attorney to obtain advice about her rights and obligations under this Agreement.  Diaz represents that she has carefully read this Agreement and finds that it has been written in language that she understands.  Diaz has been given a reasonable period of time to consider whether to accept this Agreement, and has signed it only after reading, considering and understanding it.

DIAZ UNDERSTANDS THAT ONCE SHE SIGNS BELOW, THIS DOCUMENT WILL BECOME A LEGALLY ENFORCEABLE AGREEMENT UNDER WHICH SHE WILL BE GIVING UP RIGHTS AND CLAIMS SHE MAY HAVE, ON THE TERMS STATED IN THIS AGREEMENT.

The Parties to this Agreement, with the benefit of representation and advice of counsel, have read the foregoing Agreement and fully understand each and every provision contained herein, and intend to be legally bound by its provisions.

JOYERIA    ELIZABETH    I,    CORP.,
JOYERIA ELIZABETH II, CORP. AND
JOYERIA ELIZABETH III, CORP.

By: _____            By: _____
                                                **FIORDALIZA DIAZ**
Title _____
                                          Dated: _5/21/18_____
Dated: _____


By: _____
        **TOMASA IZAQUIRRE**


Dated: _____

8

DIAZ UNDERSTANDS THAT ONCE SHE SIGNS BELOW, THIS DOCUMENT WILL BECOME A LEGALLY ENFORCEABLE AGREEMENT UNDER WHICH SHE WILL BE GIVING UP RIGHTS AND CLAIMS SHE MAY HAVE, ON THE TERMS STATED IN THIS AGREEMENT.

The Parties to this Agreement, with the benefit of representation and advice of counsel, have read the foregoing Agreement and fully understand each and every provision contained herein, and intend to be legally bound by its provisions.

JOYERIA ELIZABETH I, CORP., JOYERIA ELIZABETH II, CORP. AND JOYERIA ELIZABETH III, CORP.

By: _____

Title _____Owner_____

Dated: _5/21/18_____

By: _____

TOMASA IZAQUIRRE

Dated: _5/21/18_____

By: _____
        **FIORDALIZA DIAZ**

Dated: _____

**8**

## Acknowledgement/ ENG

I, Fiordaliza Diaz, hereby acknowledge that on May 21, 2018, the Settlement Agreement letter was translated into Spanish for me by Nendy M. Rodriguez *in person*. I further acknowledge that I understand the facts and allegations of the letter and that the same are true to my knowledge, information and belief. I sign this acknowledgment with full knowledge and consent.


FIORDALIZA DIAZ                                    5/21/18
                                                   DATE

## **Acknowledgement/SPA**

Yo, Fiordaliza Diaz, por la presente reconozco que el 21 de Mayo del 2018, la carta de Acuerdo de Solución, fue traducido al español para mí por Nendy M. Rodriguez *en persona*. Además, reconozco comprender los hechos y las alegaciones mencionadas en la carta y que el mismo es verdadero a mi conocimiento, información y creencia. Yo Firmo este reconocimiento con pleno conocimiento y consentimiento.

FIORDALIZA DIAZ

5/21/18
FECHA